UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Equine PSSM Genetics, LLC,                                  Civil No. 14-493 (MJD/FLN)

        Plaintiff,

                                                         **REPORT AND**
                                                         **RECOMMENDATION**

        v.

Animal Genetics, Inc.

        Defendant.

_____

Frank Farrell, Jr. And Alexander Farrell for Plaintiff.
Mark Privratsky for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendant's motion to dismiss or, in the alternative, to transfer venue (ECF No. 10). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendant's motion be **DENIED**.

                                          **I.    FINDINGS OF FACT**

**A.    Procedural Background**

Plaintiff Equine PSSM Genetics, LLC (Equine PSSM) owns a patent which depicts technology utilized in equine genetic testing. Compl. ¶ 8, ECF No. 1. Specifically, United States Patent No. 8,268,557 ('557 patent) claims a method for testing horses for the genetic disorder Polysaccharide Storage Myopathy (PSSM). *Id.* Equine PSSM licenses this genetic test to the University of Minnesota. *Id.* ¶ 10. All testing under the license is conducted by the University of

Minnesota, with customers shipping biological samples to the University for testing. *Id*.

Equine PSSM commenced this action on February 21, 2014, alleging that Defendant Animal Genetics (Animal Genetics) had knowledge of Equine PSSM's pending patent application for the technology at issue, but began to provide infringing services for PSSM testing prior to the issuance of the '557 patent. *Id*. ¶ 14–15. Further, the complaint states that this Court has personal jurisdiction over Animal Genetics because "Animal Genetics has continuous and systematic contacts in Minnesota." *Id*. ¶ 5. In response, Animal Genetics argues that it is not subject to personal jurisdiction in Minnesota and therefore filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue. Mot. to Dismiss, ECF No. 10.

**B.     Jurisdictional Facts**

After Animal Genetics filed its motion to dismiss, the parties stipulated to limited jurisdictional discovery. Stipulation 1–3, ECF No. 21. Animal Genetics agreed to provide information related to any contracts with Minnesota entities as well as information pertaining to Animal Genetics' sales, revenue, and advertising in Minnesota. *Id*. at 2–3.

This discovery revealed that, over the past five years, Animal Genetics has conducted 3,720 tests nationwide for PSSM. Privralzky Decl. Ex. A, at 2, ECF No. 27-1. Of that number, 156 tests were conducted for approximately 39 Minnesota customers. *Id*. For all of its services offered in the United States, Animal Genetics has approximately 32,518 customers nationwide with 524 customers in Minnesota. *Id*. Further, Animal Genetics reported total revenue from all of its services over the last five years nationwide a $6,987,452. *Id*. Approximately $2,060 of this total was generated from PSSM testing for Minnesota customers, or 0.0002% of Animal Genetics' net overall revenue. *Id*.;

Def.'s Reply Mem. in Supp. of Mot. to Dismiss 10 n.7, ECF No. 26. Evaluating services beyond PSSM testing, Animal Genetics receives approximately $75,074 in revenue from various sales and services provided to Minnesota customers, or 0.01% of its net overall revenue. ECF No. 27-1 at 2; ECF No. 26 at 10 n.8.

Animal Genetics additionally reported having no offices or agents based in Minnesota. DeKloet Aff. ¶ 4, ECF No. 15. No Animal Genetics employee has traveled to Minnesota within the last five years and the company directs no advertising to the state. ECF No. 27-1 at 1. The corporation does, however, maintain a license agreement with the University of Minnesota on an unrelated patent. *Id.*

Although Animal Genetics contends it does not ship product to Minnesota, *Id.* at 1, 3, any potential customer with access to the internet (including those in Minnesota) can download a PSSM test order form from Animal Genetics' website. Farrell Decl. ¶ 10, ECF No. 25. The customer then completes the form and mails it, along with a genetic sample (such as horse hair), to Animal Genetics' testing facilities in Florida. *Id.* Upon receiving the sample, Animal Genetics conducts relevant testing in its testing facility in Tallahassee, Florida. ECF No. 15 ¶ 8. Results are subsequently sent to the customer via a mailed letter, e-mail, or delivered through a customer account the customer can create on the Animal Genetics website. *Id.* ¶ 8; ECF No. 25 ¶ 11.

## II.  STANDARD OF REVIEW

"Federal Circuit law governs the issue of personal jurisdiction in . . . patent-related cases[s]." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002); *see also Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) ("[W]e apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the

substance of the patent laws.'" (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995))). "[W]here the district court's disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction."[1] *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). When examining a motion to dismiss for lack of personal jurisdiction when no evidentiary hearing has occurred, the Court "accepts uncontroverted allegations in the complaint as true and resolves factual disputes in the [plaintiff's] favor." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012).

### III. ANALYSIS

#### A. Personal Jurisdiction

A federal court, when assessing whether it maintains personal jurisdiction over an out-of-

---

[1] The parties dispute the relevant standard of review. *See* ECF No. 26 at 4–5; Pl.'s Mem. in Resp. to Mot. to Dismiss 3, ECF No. 23. There appears to be some ambiguity regarding the proper standard of review for a personal jurisdiction evaluation in Federal Circuit case law. In *Pieczenik v. Dyax Corp.*, the Federal Circuit evaluated personal jurisdiction pursuant to a New York long arm statute and concluded that where the parties conducted jurisdictional discovery but agreed and informed the court that no evidentiary hearing was required, the preponderance of the evidence standard applied. 265 F.3d 1329, 1334 (Fed. Cir. 2001). However, the Federal Circuit has repeatedly stated that when the court relies "on the complaint and written submissions without holding an evidentiary hearing," the plaintiff is only required to make a "prima facie showing that defendants are subject to personal jurisdiction." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *see also Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed Cir. 2012) ("When, as here, the district court makes its determination based on the record without an evidentiary hearing, plaintiffs need only show a *prima facie* case for personal jurisdiction.").

Here, the parties engaged in limited jurisdictional discovery, but neither party requested an evidentiary hearing. Given that the Court is solely relying on the motion papers and written submissions depicting limited jurisdictional discovery and did not have the benefit of an evidentiary hearing, the Court believes that applying the *prima facie* standard is appropriate. The Court notes however, that even applying the more demanding preponderance of the evidence standard, it would reach the same jurisdictional conclusion.

state defendant, must evaluate (1) whether a forum state's long-arm statute permits service of process and (2) whether maintaining personal jurisdiction over the defendant would violate due process. *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). As Minnesota applies its long-arm statute to the fullest extent permissible under due process, the two requirements collapse into a single inquiry. Minn. Stat. § 543.19; *see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992). Thus, the Court need only determine whether exercise of personal jurisdiction in this instance comports with federal due process. *3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).

Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [he or she] has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citation and quotation marks omitted). To comport with due process, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp.*, 552 F.3d at 1329 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Consistent with these due process principles, the Federal Circuit has drawn a distinction between "general" personal jurisdiction and "specific" personal jurisdiction. *Trinitec Ind., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Specific jurisdiction exists where "the defendant has purposefully directed his activities

at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472. Here, Animal Genetics argues that both general and specific personal jurisdiction are lacking. The Court shall address each argument in turn.

### 1.     General Personal Jurisdiction

As stated above, general jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). In other words, to properly confer general jurisdiction over a foreign defendant, the defendant's affiliations with the forum state must be so "continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal citation and quotation marks omitted).

Animal Genetics argues that it does not maintain sufficient business contacts with Minnesota in order to effectuate general jurisdiction in this forum. Specifically, Animal Genetics highlights that (1) the organization is incorporated and has its principal place of business in Florida, (2) no employees are based in or have even traveled to Minnesota for business, and (3) the company has "no facilities [in Minnesota] of any kind, much less the broad sales or distribution network that would establish systematic and continuous contacts to support general personal jurisdiction." Def.'s Mem. in Supp. of Mot. to Dismiss 6, ECF No. 14. In response, Equine PSSM points to a license agreement between Animal Genetics and the University of Minnesota for a separate patent, maintaining that this agreement depicts "long term and systematic contact with a premier Minnesota

entity" sufficient to incur general jurisdiction. ECF No. 23 at 8. The Court agrees with Animal Genetics in concluding that any contacts maintained with Minnesota are insufficient to impose a general personal jurisdiction finding.

In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court examined whether a defendant was subject to general personal jurisdiction in Texas when the defendant did not maintain a physical place of business in the state and was not licensed to do in business there. 466 U.S. at 416. The defendant in that case maintained some contact with the forum state, as it "sen[t] its chief executive officer to Houston for a contract-negotiation session; accept[ed] into its New York bank accounts checks drawn on a Houston bank; purchas[ed] helicopters, equipment, and training services from Bell Helicopter [a Texas company] for substantial sums; and sen[t] personnel to Bell's facilities in Forth Worth for training." *Id*. Nevertheless, the Court concluded that, even given these contacts with Texas, the defendant's associations with the forum state were insufficient to incur general personal jurisdiction. *Id*. at 418–19.

Further, in the recent case of *Daimler AG v. Bauman*, the Supreme Court evaluated whether due process permitted the exercise of general jurisdiction over a German company (Daimler) in California for alleged atrocities committed in Argentina. 134 S. Ct. at 751. The Court held that even if it were to assume that the California contacts of an indirect subsidiary of Daimler, Mercedes-Benz USA, could be imputed to Daimler for the purpose of jurisdictional analysis, there still was no basis for general jurisdiction over Daimler in California. *Id*. at 760. In that case, Mercedes-Benz USA had several California-based facilities and Mercedes-Benz USA's California sales constituted 2.4% of Daimler's worldwide sales. *Id*. at 752. However, the Court emphasized that the general jurisdictional analysis "is not whether a foreign corporation's in-forum contacts can be said to be in some sense

'continuous and systematic,'" but rather it is whether those contacts are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761. Additionally, the Court clarified that being "at home" is not synonymous with "doing business" in a forum state, specifically stating that "the exercise of general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping." *Id.* at 761 (internal quotation marks and citation omitted). In so concluding, the Court reasoned that such a sweeping understanding of general jurisdiction would allow Daimler to be subject to general jurisdiction in all states where Mercedes-Benz USA's sales were "sizable" and "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." *Id.* at 761-62 (internal quotation marks and citations omitted).

Here, an assessment of Animal Genetics' activities, both in Minnesota and nationwide, reveals that it cannot be considered "at home" in Minnesota for the purposes of general jurisdiction. Animal Genetics' contacts and activities with Minnesota certainly do not rise to levels examined in *Helicopteros* and *Daimler*, where the Supreme Court held that general jurisdiction was not present. Like the defendant in *Helicopteros*, Animal Genetics does not have any physical business locations in Minnesota—it maintains no offices, employees, personal property, bank accounts, telephone numbers, or mailing addresses in the state. Further, no Animal Genetics employee has traveled to Minnesota for business or training. In sum, "nothing here exceeds the commercial contacts that the Supreme Court held were insufficient in *Helicopteros*." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

Animal Genetics does, however, receive some revenue from sale orders placed by individuals in Minnesota; but again, these sales are insufficient. In *Daimler*, the Supreme Court stated that, even if it were to impute the activities of Mercedes-Benz USA to the foreign Daimler Corporation, there still would be insufficient contacts to establish general jurisdiction because "Daimler's slim contacts with the State hardly render it at home there." *Daimler*, 134 S. Ct. at 760. As noted above, approximately 2.4% of Daimler's worldwide sales came from California, whereas only 0.01% of Animal Genetics net overall revenue is comprised of various sales and services related to Minnesota customers. ECF No. 26 at 10 n.8. Between January of 2008 and June of 2014, Animal Genetics had approximately 32,518 customers throughout the United States, with only 524 of those customers located in Minnesota. ECF No. 27-1 at 2. Notably, under *Diamler*, even if Animal Genetics' sales were "sizable" in Minnesota—and the Court concludes that they are not—this does not necessitate a finding of Animal Genetics being at home within the State. Nothing in the record supports a finding that Animal Genetics is "essentially at home" in Minnesota.

Equine PSSM's argument in support of general jurisdiction centers on the fact that Animal Genetics has a single license agreement with the University of Minnesota on an unrelated patent. ECF No. 23 at 8. This argument is unavailing. A licensing agreement with an entity based in a foreign state does not automatically confer general jurisdiction in that state. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (concluding that the defendant, which maintained several licensing agreements with California entities, was not subject to general jurisdiction because "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders") (internal citation omitted). Equine PSSM claims that because the license is dated 2011 and Animal Genetics offers

9

genetic testing utilizing the licensed method, Animal Genetics "has thus entered into a long term and systematic contact with a premier Minnesota entity" sufficient to impose general jurisdiction. ECF No. 23 at 8. No facts pertaining to this agreement, alone or in combination with Animal Genetics' other Minnesota activities cited above, support a conclusion that Animal Genetics' activities in Minnesota were so continuous and systematic to make it at home there. At most, the license agreement represents that Animal Genetics simply engaged in some business with a Minnesota entity.

In sum, this "is a classic case of sporadic and insubstantial contacts with the forum state, which are not sufficient to establish general jurisdiction over the defendants in the forum." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008). Therefore, the Court concludes that general jurisdiction over Animal Genetics is lacking in this District.

### 2. Specific Personal Jurisdiction

When defendant is not subject to general jurisdiction in a certain forum, "a district court may nonetheless exercise specific personal jurisdiction over the defendant subject to a three part test." *Autogenomics, Inc.*, 566 F.3d at 1018. "To determine whether [specific] jurisdiction over any out-of-state defendant comports with due process, we look to whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Elecs. for Imaging, Inc.*, 340 F.3d at 1350. "The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). The Court concludes that this District maintains specific personal jurisdiction over Animal Genetics.

### a.     **Purposefully directed activities**

As to the first prong, Animal Genetics argues that it does not purposefully direct activities towards Minnesota residents and thus specific jurisdiction would be inappropriate. Equine PSSM counters that Animal Genetics has a "requisite long and regular history of sales directed at Minnesota" and the company's website solicits customers to order infringing PSSM tests in Minnesota, thereby purposefully directing its sales activities to Minnesota customers. ECF No. 23 at 5–7. The Court agrees with Equine PSSM.

Animal Genetics states that it relies exclusively on its website to interface with its Minnesota customers as it does not maintain a place of business in the State or send employees to the State for business purposes. ECF No. 25 ¶ 12. As such, much of the parties' arguments pertaining to this first prong focus on Animal Genetics' website and the website's degree of interactivity.

The Federal Circuit has not formulated a specific test for evaluating when the qualities of a website make it so interactive as to constitute purposeful direction of activities to a forum state. As Animal Genetics' website is not solely directed to residents of Minnesota—that is, it can be accessed anywhere in the country by an individual with an internet connection—the website "does not by itself show any persistent course of conduct by the defendants in the District." *Trintex Indus., Inc.*, 395 F.3d at 1281 (internal citation omitted). Instead, the interactivity of the website with the forum state must be evaluated. The Court finds the test articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W. D. Pa. 1997) instructive on this point. *See also Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003) (adopting the approach set forth in *Zippo*). In *Zippo*, the court articulated a sliding scale approach to evaluating whether specific jurisdiction exists based on a website. 952 F. Supp. at 1124.  In this analysis, three different forms

of websites are identified. First, there are "active" websites, which clearly facilitate business over the internet through contract formation and the exchange of business information. *Id*. Second, and on the opposite side of the scale, are "passive" websites, where information is simply posted for website users to view. A third category of websites resides in between the active and passive—"interactive" websites. *Id*. On interactive websites, a user may exchange some amount of information with a host computer. *Id*. For websites comprising this middle ground, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

The Court concludes that Animal Genetics' website resides somewhere in the "middle ground" identified in *Zippo*, and the website's degree of interactivity depicts some purposefully directed activities to Minnesota customers purchasing the PSSM test. Animal Genetics relies exclusively on the website to solicit purchases and interface with Minnesota customers. ECF No. 25 ¶ 12. For a customer to order a PSSM test from Animal Genetics, it must download a user submission form from the website and mail that form, together with a specimen sample, to the Animal Genetics facility in Florida. *Id*. ¶ 10. Most critically, however, Animal Genetics' website allows for customers to receive genetic testing results through an online account customers can create on the website—which denotes some element of exchange or interactivity over the website between the customer and Animal Genetics. *Id*. ¶ 11. Given that Animal Genetics' website is its vehicle for facilitating test orders from Minnesota customers and the website contains at least one interactive element (the user accounts to view testing results), the Court concludes that the website weighs heavily toward a finding that Animal Genetics focused activities on Minnesota PSSM customers through the website.

Furthermore, although the degree of the website's interactivity supports the conclusion that Animal Genetics purposefully directed its activities to Minnesota residents, it is the direct sale of the allegedly infringing test to Minnesota residents that is most determinative here. As stated by courts in this District on several occasions, "The general rule is that when a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant." *Caddy Prods., Inc. v. Greystone Int'l, Inc.*, Civ. No. 05-301 JRT/FLN, 2005 WL 3216689, at *2 (D. Minn. Nov. 29, 2005); *see also WhatRU Holding, LLC v. Bouncing Angels, Inc.*, No. CIV. 13-2745 JNE/TNL, 2014 WL 641517, at *1 (D. Minn. Feb. 19, 2014). In other words, "[w]hen a company solicits a state's residents to buy its products, it is specifically targeting that state and receiving benefits from it." *Genetic Techs. Ltd. v. Interleukin Genetics Inc.*, No. 10-CV-69-BBC, 2010 WL 3122304, at *3 (W.D. Wis. Aug. 9, 2010). Here, Animal Genetics purposefully directed its activities at the forum by accepting orders from no less than 39 Minnesota customers for the test utilizing the patented technology at issue. Animal Genetics then directed the results of those tests to the Minnesota customers via mail, e-mail, or the customer portal on its website. These actions constitute a specific targeting of Minnesota residents.

In further arguing that this prong remains unsatisfied, Animal Genetics stresses that its sales in Minnesota related to PSSM testing are minimal, resulting in the slight amount of $2,060 (0.0002% of Animal Genetics' net overall revenue), and that it has never shipped or directed the allegedly infringing test into the state. ECF No. 26 at 10–12. These arguments are unpersuasive. It is not the volume of activity that is critical in determining whether a defendant directed activities towards a forum state, it is the degree and type of contact the defendant exhibited toward the state and its residents. *See Osteotech, Inc. v. GenSci Regeneration Scis.*, 6 F. Supp. 2d 349, 354 (D.N.J.

1998) (stating that the percentage of the defendant's total sales formed by the sale of an infringing product in the forum state is irrelevant to specific jurisdiction). Indeed, courts on several occasions have held that even a *single* sale of an infringing product in a forum state can show purposeful availment on behalf of the defendant sufficient to confer specific personal jurisdiction. *See WhatRU Holding, LLC*, 2014 WL 641517, at *1; *Caddy Prods., Inc.*, 2005 WL 3216689, at *2. Moreover, as to Animal Genetics' argument that the infringing product was never shipped to Minnesota, the Court sees no meaningful distinction between shipping an infringing product into a forum state and purposefully sending testing results which utilized a potentially infringing method into the forum state. In either scenario, the defendant specifically directs activity into the forum. Animal Genetics purposefully directed its activities to Minnesota by selling PSSM tests to 39 Minnesota customers and communicating the subsequent testing results to those customers. The first prong of the specific jurisdiction analysis is met.

      **b.**   **Claim arises out of or relates to Defendant's activities in Minnesota**

   The second prong of the Federal Circuit's specific jurisdiction analysis focuses on whether the claims at issue arise out of or relate to the defendant's activities in the forum state. Here, Animal Genetics contends that this prong remains unsatisfied because all of the testing which allegedly violates Equine PSSM's '557 patent occurs solely at Animal Genetics' testing facility in Florida. ECF No. 26 at 13. Accordingly, Animal Genetics emphatically states that the second prong is "plainly not satisfied." *Id*.

   However, what Animal Genetics fails to note is that 35 U.S.C. § 271(a) identifies patent infringement as occurring when "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States." Accordingly, a patent infringement claim can arise

14

out of, or relate to, a defendant's activities within a forum State when the defendant engages in sales of the accused product within the forum. *See WhatRU Holding, LLC*, 2014 WL 641517, at *1 (holding that the second factor of the specific jurisdiction test was satisfied because the "infringement claim adequately arises out of or relates to [the defendant's] forum activities because the product it sold in Minnesota is the product accused of infringement"). In other words, as the Federal Circuit specified in *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, "for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. In such litigation, the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention." 552 F.3d at 1332. Here, Equine PSSM's claim of patent infringement arises out of and relates to Animal Genetics' activities within the forum state because Animal Genetics sold the allegedly infringing test to 39 Minnesota customers. Thus, the second prong for specific jurisdiction is therefore satisfied.

### c. Reasonable and fair

Because the Court concludes that Animal Genetics' activities within Minnesota satisfy the first two prongs the specific jurisdiction analysis, the Court next turns to whether conferring personal jurisdiction over Animal Genetics would be both reasonable and fair. "To determine whether exercising personal jurisdiction would comport with 'fair play and substantial justice,' [the Court] consider[s] five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social polices." *Synthes*

*(U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009). A defendant seeking to defeat a finding of specific jurisdiction based on this last prong "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Honeywell Int'l, Inc. v. Venstar, Inc.*, 287 F.R.D. 478, 482 (D. Minn. 2012) (citing *Burger King*, 471 U.S. at 477).

In arguing that specific jurisdiction over it would be improper, Animal Genetics emphasizes that it would bear a substantial burden litigating in this District and a more efficient resolution could be reached in the less-congested Northern District of Florida. ECF No. 14 at 10. Having considered the above factors, the Court disagrees and concludes that exercising specific jurisdiction over Animal Genetics would be both reasonable and fair. Equine PSSM is a Minnesota LLC with its principal place of business in the state, which "gives Minnesota a strong interest in providing a forum for [Equine PSSM] to resolve this dispute." *Honeywell Intern., Inc.*, 287 F.R.D. at 482. Similarly, Animal Genetics sells its testing and products nationwide, resulting in nearly $7,000,000 of net revenue over the last five years. Animal Genetics can afford to defend itself in this District; the burden on Animal Genetics to litigate in the forum state is not unreasonably prohibitive.

Animal Genetics has failed to show that this is one of the "rare situation[s] in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (quoting *Beverly Hills Fan v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)). Specific jurisdiction over Animal Genetics in the District of Minnesota is proper, and this Court therefore recommends that Animal Genetics' motion to dismiss for lack of personal jurisdiction be denied.

**B.    Venue Transfer**

In the alternative, Animal Genetics argues that even if it were subject to personal jurisdiction in the District of Minnesota, the Court should transfer venue to the more convenient Northern District of Florida. The Court disagrees. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." However, the Court gives "considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010).

The Court concludes that a transfer of this action would only shift the inconvenience of the forum to Equine PSSM. *See B.F. Goodrich Co. v. Auxitrol S.A.*, No. 00-43, 2001 WL 1640103, at *6 (D. Minn. Nov. 30, 2001) (citing *Norval Indus., Inc. v. Superior Co.*, 515 F. Supp. 895, 899 (D. Minn. 1991)). Indeed, it may be true that litigating this case in the Northern District of Florida would be more convenient for Animal Genetics, but the fact remains that all of Equine PSSM's officers and business records remain in Minnesota. Moreover, none of the factors cited by Animal Genetics—including court congestion, witness and documents relating to Animal Genetics being located in Florida, and ease of enforcing judgment, to name a few—overcome the judicial preference for allowing plaintiffs to designate a forum. *Id.* (citing *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D. Minn. 1988)). Finally, the Court notes that in patent cases venue exists over an allegedly infringing corporation "wherever there is personal jurisdiction." *Trintec Indus., Inc.*, 395 F.3d at 1280 (finding that no separate venue inquiry was needed as venue existed where the court

maintained personal jurisdiction over a defendant in a patent case). As such, Animal Genetics' request to transfer venue should be denied.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY RECOMMENDED** that Defendant's motion to dismiss or, in the alternative, transfer venue be **DENIED**.

DATED: February 10, 2015     *s/Franklin L. Noel*

                                               FRANKLIN L. NOEL
                                               United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 25, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 25, 2015** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.